UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CINDY L. WINCHELL,

                          Plaintiff,

v.                                                                Case No.  5:06-cv-334-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income.  (Doc. 1.)  The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions.  (Docs. 14 & 18.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On September 9, 2003, Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income claiming a disability onset date of March 2, 2001. (R. 60-62.)  Plaintiff's applications were denied initially (R. 36-38), and upon reconsideration. (R. 40-43.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted an administrative hearing on January 27, 2006 (R. 363-389) and issued a decision unfavorable to Plaintiff on April 4, 2006. (R. 8-17.) The Appeals Council denied Plaintiff's request for review on July 25, 2006. (R. 4-6.) On September 14, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. <u>SUMMARY OF THE EVIDENCE</u>

Plaintiff was born on August 8, 1957 and was forty-eight (48) years old at the time of the ALJ's decision. (R. 365.) Plaintiff has a tenth grade education (R. 366), and has past relevant work history as a stockroom clerk, hospital food services assistant, convenience store sales clerk, and assembly worker. (R. 76-83.) Plaintiff contends that she became disabled on March 2, 2001 due to a broken back and pelvis,

---

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

[22] See Doughty 245 F.3d at 1278 n.2.

hemochromatosis,[23] high blood pressure, diabetes, an enlarged heart, fatigue, arthritis in the left ankle, wrist surgery and a closed head injury. (R. 60, 67.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff has the following impairments: hypertension, diabetes mellitus, hemochromatosis, arthritis, enlarged heart and chest pain, wrist pain, ankle pain, and chronic back pain. (R. 13.)

The medical evidence reveals that Plaintiff was involved in a motorcycle accident in 1977 when she was 20 years old. (R. 118-121.) Plaintiff suffered a pneumothorax, a cerebral concussion, fracture of the right scapula, severe contusion of the right kidney, fracture of the pubic ramus and a compression fracture of L-1, with fracture of the transverse processes of L1-L4.

The next medical evidence of record begins in June 28, 2000, at which time Plaintiff was examined by Thomas L. Zoeller, M.D. (R. 122.) Plaintiff presented to Dr. Zoeller with complaints of insidious onset of pain in the area of the right lateral epicondyle.[24] Plaintiff was working at a job that entailed repetitive grasping and gripping with the use of a staple gun as well as repetitive lifting. She began experiencing pain in the right finger with the tendency for the finger to "lock up." Plaintiff described significant swelling in her finger after she received a tendon sheath injection into her ring finger.

---

[23] Hemochromatosis is a disorder of iron metabolism characterized by excessive absorption of ingested iron, saturation of iron-binding protein and deposition of hemosiderin in tissue, particularly in the liver, pancreas and skin; cirrhosis of the liver, diabetes, bronze pigmentation of the skin and eventually heart failure may occur. Stedman's Medical Dictionary (27th ed. 2000).

[24] A projection from a long bone near the articular extremity above or upon the condyle. A condyle is a rounded articular surface at the extremity of the bone. Id.

Plaintiff reported no benefit from the injection. Plaintiff was being treated with splinting, a counterforce brace, and was in therapy and received iontophoresis. Plaintiff reported that her pain improved but was not completely resolved.

Dr. Zoeller noted that Plaintiff had no gross deformity of the right hand, wrist, forearm or elbow and that she retained "quite reasonable write motion which is painless." There was no crepitation with wrist motion and she had full range of digital motion. Plaintiff did report pain in the right finger at the level of the A1 pulley. (R. 122.) Dr. Zoeller opined that Plaintiff's examination was consistent with stenosing tenosynovitis[25] manifested as triggering in her ring finger. As the tendon sheath injection failed, Dr. Zoeller recommended proceeding with an A1 pulley release. Dr. Zoeller limited Plaintiff's use of her right hand and advised her to avoid repetitive grasp activities. She was placed on a 2-pound lifting restriction. (R. 122.)

Plaintiff reported back to Dr. Zoeller on August 1, 2000 that all triggering had resolved after the A1 pulley release. Dr. Zoeller stated that Plaintiff appeared satisfactory and demonstrated "satisfactory full motion at this point." (R. 123.)

On November 15, 2000, Plaintiff was seen by Jose Ma, M.D. for control of hypertension, diabetes and because Plaintiff required a switch in her primary care provider. (R. 145.) Dr. Ma noted that Plaintiff had increasing blood pressure of 160 over 100 and sugars ranging in the 100 to 300 range. She was started on Glyburide and the prescription for Prinivil was increased. Dr. Ma opined that Plaintiff had hypertension and started Plaintiff on Glucophage. (R. 146.)

---

[25] Stenosing Tenosynovitis is the inflammation of a tendon and its sheath resulting in contracture of the sheath causing an obstruction of tendon glidding. It can be a cause of trigger finger conditions. Id.

On March 3, 2004 Plaintiff had an x-ray of her thoracic spine at Munroe Regional Medical Center. (R. 243.) Plaintiff was diagnosed with lower thoracic or upper lumbar compression deformity with a fracture that had progressed from October 2003 and clinical correlation for the site of pain was recommended. It was recommended that Plaintiff have a nuclear medicine bone scan and an MRI performed to further assess whether the fracture was still symptomatic.

From July 9, 2003 through October 13, 2004, Plaintiff was seen at the Marion County Health Department. (R. 195-234.) Plaintiff was initially diagnosed with fatigue and sleep apnea, depression, and hemochromatosis. Plaintiff complained of chest pain on October 7, 2003 and a chest x-ray was ordered. On April 6, 2004, Plaintiff was diagnosed with right chest pain, thoracic spine pain with a decreased range of motion. Plaintiff was scheduled for an MRI. (R. 206.) On June 2, 2004, Plaintiff was diagnosed with thoracic tenderness and severe surface vessel dilation in her feet, ankles and calves. (R. 202.) Plaintiff continued to complain of right chest pain on June 21, 2004. (R. 201.) On October 13, 2004, Plaintiff's records disclose that she was still suffering from a decreased range of motion and chest tenderness. (R. 195.)

The Marion County Health Department completed a Medical Verification Form Completed by Licensed Physician on October 13, 2004. (R. 240.) This form was completed by a nurse practitioner who stated that Plaintiff suffered from Hematochromatosis, low back pain, "NIDDM, HTN, DJD" and problems with her thoracic spine. The nurse practitioner stated that Plaintiff was unable to work due to Plaintiff's need to see a hematologist every week for blood draws. The nurse

practitioner further stated that this was a lifetime limitation on her activities and Plaintiff's medications prevent her from participating in work activities.

On January 24, 2003, Nicholas H. Bancks, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment form regarding Plaintiff's ability to work. (R. 244-251.) Dr. Bancks found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday and was unlimited in her ability to push and/or pull. Plaintiff had occasional limitations with balancing, stooping and crouching. Dr. Bancks found that the severity or duration of Plaintiff's complaints was disproportionate to the expected duration or severity on the basis of Plaintiff's medically determinable impairments. It is notable that Dr. Bancks had no treating or examining source statements in the file he reviewed. (R. 250.)

On July 16, 2003, Plaintiff had a chest x-ray at Munroe Regional Medical Center. The mediastinal and cardiac shadows were unremarkable and Plaintiff's lungs were clear. There was no pleural effusion or pulmonary venous congestion. However, the x-ray showed that there was a mild compression fracture at the thoracolumbar junction. The age of the fracture could not be determined, but it was recommended that a bone scan or MRI be done to determine if this was the cause of Plaintiff's chest pain. (R. 262.)

Plaintiff had another x-ray on October 15, 2003. This x-ray showed a cardiac silhouette that was within normal limits. Further, the x-rays evidence that Plaintiff's lungs were without infiltrates, and there no pleural effusion, pneumothorax nor any bony abnormalities identified. Dr. Rivera stated that the chest x-ray was "normal." (R. 261.)

On January 8, 2004, Plaintiff was seen at the request of the Division of Disability Determinations by Edward L. Demmi, M.D. (R. 294-298.) Dr. Demmi found that Plaintiff had no complications due to her diabetes or hypertension. Plaintiff complained of "occasional chest pain with shortness of breath." However, Dr. Demmi found that this was related to stress and brought on by exertion. Plaintiff's range of motion of her spine was normal. However, she did have decreased motor strength in the right wrist at 4/5. Her grip strength and fine manipulation were normal. Dr. Demmi did not note any motor deficits in Plaintiff's upper or lower extremities, except for the decreased motor strength in her right wrist. (R. 298.)

In May 2004 another Physical Residual Functional Capacity Assessment form was filled out regarding Plaintiff's physical limitations. (R. 316.) This evaluation was identical to Dr. Bancks' evaluation, except that the form contains notations by the evaluator that "symptoms are credible" and that "physical condition under adequate control." (R. 321.)

## IV.  DISCUSSION

Plaintiff's only argument on appeal is that the ALJ erred at step five of the sequential evaluation by relying on the Medical Vocational Guidelines to find that other jobs exist that Plaintiff could perform, rather than obtaining the testimony of a vocational expert ("VE") to assist in resolving this issue because of Plaintiff's "severe non-exertional impairment, i.e. chronic pain." According to Plaintiff, the ALJ was required to obtain testimony from a VE to accurately consider Plaintiff's non-exertional problems resulting from hypertension, Diabetes Mellitus, Hemochromatosis, arthritis, enlarged heart, chest pain, wrist pain, ankle pain and chronic back pain.

While the ALJ did find at step two of the sequential evaluation that Plaintiff suffers from the severe impairments of chest, wrist, ankle and chronic back pain, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."[26]

Case law is well settled in the Eleventh Circuit regarding the three part test for establishing disability based upon testimony of pain and other symptoms.[27] First, a claimant must show that she has an underlying medical condition and, if that is established, she must either produce objective medical evidence confirming the severity of the alleged pain, or show that the objectively determined medical condition can reasonably be expected to give rise to her claimed pain.[28] The ALJ must articulate explicit and adequate reasons for discrediting subjective testimony regarding pain. If the objective medical evidence does not confirm the severity of the alleged symptoms but the claimant does establish an impairment that could reasonably be expected to give rise to such pain, than the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated.[29]

In the instant case, Plaintiff has not shown that her impairments cause more limitations than the limitations found by the ALJ as part of his assessment of Plaintiff's RFC. The ALJ's assessment is supported by the medical source statements of

---

[26] Moore v. Barnhart, 405 F.3d 1208 at 1214 n.6 (11th Cir. 2005).

[27] Wilson v. Barnhart, 284 F.3d 1219 (11th. Cir. 2002).

[28] Id. at 1225-1226.

[29] 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p.

Plaintiff's capabilities - many of which disclose minimal findings upon physical examination.

Plaintiff's contention that the ALJ failed to consider the restrictions from Plaintiff's pain is belied by the simple fact that the RFC assessment by the ALJ actually included greater restrictions on Plaintiff than the restrictions assessed by any physician, including the state agency physicians. For example, the ALJ found that Plaintiff can only do sedentary work while the state agency physicians found that Plaintiff could perform a full range of light work. Similarly, Dr. Demmi, who examined Plaintiff in January 2004, did not impose any limitations on Plaintiff other than noting Plaintiff's complaints of chest pain and shortness of breath after walking a mile.

As further support for his assessment of Plaintiff's RFC the ALJ specifically discussed in his decision and noted that upon physical examination Plaintiff's gait was found to be normal, and that while Plaintiff does have some decreased motor strength of her right wrist, and some mild arthritis of the wrist and ankle, she has no problems with fine and gross manipulations, her hip motor strength was 5/5 and her supine and seated straight lifts were negative.[30] These minimal findings fully support the ALJ's RFC assessment and do not support Plaintiff's argument that her pain was of such severity that it should have been considered a disabling non-exertional impairment.

Indeed, the only medical source in the record that mentions a restriction that is disabling is in a form completed by a nurse practitioner in October 2004, who based her statement that Plaintiff was "unable to work" on the fact that Plaintiff needed to have her

---

[30] R. 15.

blood drawn on a routine basis. The statement is not based upon restrictions from disabling pain. This assessment is inconsistent with the totality of the records from the other physicians and, therefore, stands alone as nothing more than a conclusory statement of inability to work rather than as an opinion addressing functional limitations or restrictions related to pain. Moreover, in addition to the lack of clinical support for the statement of the nurse practitioner, even if her statement was supported by objective findings, a nurse practitioner is not an acceptable medical source and should therefore be accorded lesser weight.[31]

In sum, the ALJ's conclusion in this case that Plaintiff's claims of pain were not severe enough to limit her ability to perform basic work skills and were not sufficient to significantly erode the occupational base is based upon the weight of the medical sources in the record and is more generous with regard to Plaintiff's restrictions than the restrictions the acceptable medical sources noted in their assessments. Therefore, for these reasons, the Plaintiff has failed to show that her alleged pain or other symptoms caused additional non-exertional limitations that prevented her from performing the full range of sedentary work.

Where, as here, the RFC of the claimant only includes exertional limitations or non-exertional limitations that do not significantly erode the occupational base or significantly limit basic work skills, the ALJ may rely exclusively on the Grids and is not required to obtain the testimony of a VE to assess whether there are a significant number of jobs in the national economy that Plaintiff can perform at her given functional

---

[31] 20 C.F.R. §§ 404.1513, 416.1513; SSR 06-3p.

level.[32] Accordingly, the ALJ did not err by relying upon the Grids at step five in concluding that Plaintiff is not disabled.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on August 23, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:

The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[32] 20 C.F.R. §§ 404.1569, 416.1569(a); 416.969, 416.969a; Phillips, 357 F.3d at 1242-43.